**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

LEROY WHITE,

               **Plaintiff,**

      v.                              **1:13-cv-01452-WSD**

**CRYSTAL MOVER SERVICES,
INC.,**

               **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Justin S. Anand's

Non-Final Report and Recommendation ("R&R") [39] on Defendant Crystal

Mover Services Inc.'s ("Crystal Mover") Motion for Summary Judgment [29].

**I.     BACKGROUND**

    A.    <u>Facts</u>[1]

On June 1, 2009, Plaintiff Leroy White ("Plaintiff") was hired as a

Technician by Defendant Crystal Mover to service the Automated People Mover

("APM") system at the Atlanta Hartsfield-Jackson International Airport

---

[1] The facts are taken from the R&R and the record.  The Court finds no plain error in the facts.  To the extent that the parties have not objected to any specific facts determined in the R&R, the Court adopts them.  <u>See</u> <u>Garvey v. Vaughn</u>, 993 F.2d 776, 779 n.9 (11th Cir. 1993).

("Airport").  Alford McCarthy ("McCarthy"), an African-American site manager, was responsible for Operations and Maintenance of the APM system at the Airport. On July 22, 2009, McCarthy promoted Plaintiff to the position of a Lead Technician.  Crystal Mover's employees were assigned to one of three shifts at the Airport.  The first shift began at 6:00 a.m. and ended at 2:30 p.m.  The second shift began at 2:00 p.m. and ended at 10:30 p.m.  The third shift began at 10:00 p.m. and ended at 6:30 a.m.  In October 2009, McCarthy assigned Plaintiff to work on the third shift.  Plaintiff was responsible for retrieving, repairing, and performing maintenance on the trains at the Airport.

At the end of 2009 and in the beginning of 2010, Plaintiff complained to McCarthy that Caucasian employees at Crystal Mover conversed with African-Americans by raising their voices and speaking in "hostile tones."  Plaintiff testified at his deposition that, in 2010, McCarthy told Plaintiff to "leave the white boys alone."  Plaintiff claims that Caucasian employees had complained to McCarthy because Plaintiff sent two African-American employees to train in the central control room.  Employees in the central control room use computer televisions and cameras to monitor the tracks and stations.  Plaintiff further testified that, in February, 2011, McCarthy told a number of employees that "the difference between a white worker and a black worker [is that] a black worker

2

wants to work four hours and sit down for four hours . . . [A] white worker is a good worker.  A white worker will work with you all day.  He will help you in any way he can.  He is a good worker."  Def.'s Statement of Material Facts at ¶ 83; Pl.'s Dep. at 53-55.

On March 31, 2011, Crystal Mover solicited applications for two Engineer positions that required potential candidates to perform "backup supervisory or managerial services" for the APM system at the Airport.  Def.'s Statement of Material Facts at ¶ 50.  Applicants for the Engineer positions were required to hold a "Bachelor's degree in Electrical or Mechanical engineering or equivalent experience."  Id.  Plaintiff applied for the Engineer position by submitting a cover letter, resume, and a list of the training he had received at Crystal Mover.  John Champ ("Champ"), Vice-President of Operations and Maintenance, and Bob Mihalco ("Mihalco"), Vice President of Human Resources, reviewed the applications for the Engineer positions.

McCarthy, Michael Marshall, an African-American Engineer in Operations and Maintenance, and Akiko Yoshida, an Asian-American Administrative Assistant in Human Resources ("HR"), provided advice on the selection of candidates to interview for the Engineer positions.  Champ and Mihalco decided to interview two Caucasian employees and two African-American employees for the

Engineer positions.  Champ, Mihalco and McCarthy interviewed the applicants, and selected Chad Perret ("Perret"), a Caucasian Lead Technician, and Gus Bush ("Bush"), an African-American Technician, for the Engineer positions.  Bush was selected because he has a college degree and 23 years of experience working for the Metropolitan Atlanta Transit Authority ("MARTA").  At MARTA, Bush attained experience in supervisory roles.  Perret was selected because he has a Bachelor's degree in Electrical Engineering, nine years of experience in the engineering field, and supervised other employees as an assistant project manager at another company before he started working at Crystal Mover.

Defendant asserts that Plaintiff was not selected for an interview because Plaintiff did not have supervisory experience, and Defendant was not aware when the interview decision was made that Plaintiff had previous experience in a supervisory role.[2]

Plaintiff claims that, in 2009, McCarthy offered Plaintiff an Engineer position in Miami, but Plaintiff did not accept McCarthy's offer because he did not

_____

[2] Plaintiff contends that he previously owned his own company where he supervised over 50 employees.  Plaintiff admits that he did not list any supervisory experience on the resume that he submitted for the Engineer position.  Plaintiff believes that McCarthy, Mihalco and Champ were aware of Plaintiff's supervisory experience because he informed them about his prior experience during his initial interview with Crystal Mover in June 2009.

want to relocate to Miami.  Defendant states that McCarthy was not authorized to offer Plaintiff a position in Miami, and that Plaintiff was not formally offered a position in Miami in 2009.

Plaintiff believes that he was not selected for an interview for the Engineer position because McCarthy was involved in the selection of candidates.  On May 2, 2011, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), in which he alleged that Crystal Mover discriminated against him because of his race and national origin.

On March 5, 2012, Crystal Mover solicited applications for one Engineer position after Bush left the company.  Plaintiff applied for this position by submitting the same application materials that he submitted for the Engineer position in 2011.  Plaintiff also included certificates of relevant training that he had completed at various institutions and employers.  Crystal Mover interviewed all the candidates that applied for the Engineer position.  Mihalco, Champ, McCarthy, Marshall, Yosihda and Perret interviewed Plaintiff.  Joseph Nelson, an African-American, was selected for the Engineer position because he has an associate's degree in electronics, twenty-eight years of electrical-mechanical experience, and supervisory experience from his previous jobs.  Defendant asserts that Plaintiff was not selected for the Engineer position because he does not have a college degree or

relevant supervisory experience, and Plaintiff did not impress the interview panel

during the interview process.  Plaintiff believes that he was not chosen for the

Engineer position in 2012 because he filed a charge of racial discrimination against

Crystal Mover with the EEOC.

Plaintiff also claims that, in 2011, he was denied opportunities to work

overtime because of his race, even though Caucasian employees were given

opportunities to work overtime.  On October 28, 2010, McCarthy informed all

employees that overtime opportunities would be reduced at Crystal Mover, and

employees could not work overtime unless they were scheduled to do so by the

company.  In January 2011, Champ emailed McCarthy and stated that overtime at

the Airport was "off the charts," and there was no way that "excessive overtime"

could continue.  As a result, Crystal Mover implemented a seniority-based system

(the "matrix system") for the distribution of overtime opportunities.

According to Defendant, when there was an overtime opportunity, the

Engineer on the shift looked at the matrix, and asked the employee on the top of

the list if the employee was available to work, and the Engineer would move down

the list until an available employee was found.  Plaintiff argues that overtime

opportunities were not distributed pursuant to the matrix system, and that certain

Caucasian employees continued to work overtime.  Plaintiff had the highest

6

number of overtime hours worked by a Technician in 2009, and the second highest number of overtime hours worked by a Technician in 2010. In 2011, four African-American employees had the second, third, fourth, and fifth highest number of overtime hours. Overall, the overtime hours worked by Crystal Mover's employees decreased from 10,682.87 hours in 2010 to 4,821 hours in 2011.

Defendant asserts that the majority of overtime hours are worked during the third shift because only half of the system is operational at that time, which allows for maintenance to be performed without interfering with the system's availability. Christopher Hite, a Caucasian Technician, had the highest number of overtime hours in 2011. Defendant explains that Hite was required to work overtime because there were problems with the Daily Recording and Reporting System ("DRR") and the Power Distribution System ("PDS"). Hite was an expert in DRR and PDS. Tim Fox, an Asian-American Technician, had the second highest number of overtime hours, in part, because he worked on the second shift. Employees on the first and second shift have more opportunities to work overtime because the majority of overtime opportunities occur during the third shift.[3]

Plaintiff claims that, because of his race, towards the end of 2011 and the

---

[3] An employee who works on the first or second shift would have opportunities to perform the more available overtime on the third shift. Fox, a second shift employee, could incur overtime by continuing to work into the third shift.

7

beginning of 2012, he was not allowed to clock in to work 15 minutes early, and was not paid for this additional time.  Plaintiff alleges that Hite and Fox were able to clock in 15 minutes early and were paid for this additional time.  From August 2010 to July 2012, Plaintiff clocked in 15 minutes early, and he was paid for this additional time on 62 days.  During the same time period, Fox and Hite clocked in 15 minutes early, and they were paid for the additional time on 45 and 41 days, respectively.  On October 1, 2011, Crystal Mover instructed its employees not to clock in 15 minutes earlier than their start time.  On November 14, 2011, Crystal Mover sent a memorandum to all employees stating that all employees are required to work from their scheduled start time to their scheduled end time, and that employees will only be paid for the time they were scheduled to work.  The memorandum also stated that the policy was being implemented because a recent audit showed that clocking in early was "causing a significant impact on the budget" of the site.  Def.'s Statement of Material Facts at ¶ 218.

B.    Procedural History

On April 30, 2013, Plaintiff filed this action against Crystal Mover, asserting numerous claims of race-based discrimination and unlawful retaliation under 42 U.S.C. § 1981(a).  On January 15, 2014, Crystal Mover moved for summary judgment.  On June 24, 2014, Magistrate Judge Justin Anand issued his R&R on

the summary judgment motion.  In the R&R, the Magistrate Judge recommended that (i) Defendant's Motion for Summary Judgment be denied on Plaintiff's claim that Defendant failed to promote Plaintiff to the Engineer position in 2011 because of his race, and (ii) Defendant's Motion for Summary Judgment be granted on Plaintiff's remaining claims for race-based discrimination and unlawful retaliation.

On July 9, 2014, Defendant objected to the R&R on the ground that the Magistrate Judge's recommendation that summary judgment not be granted on Plaintiff's claim that Crystal Mover failed to promote Plaintiff to the Engineer position in 2011 because of his race, should be overruled.  On July 11, 2014, Plaintiff objected to the R&R on the ground that there are genuine issues of fact regarding Plaintiff's race-based discrimination claims for (ii) the denial of overtime opportunities, (ii) the failure to pay Plaintiff for clocking in earlier than his scheduled time; and (iii) the failure to promote Plaintiff to an Engineer position in 2012 because Plaintiff filed a discrimination complaint with the EEOC.  Plaintiff claims that summary judgment should not be granted on these claims.  Neither party objected to the Magistrate Judge's findings and conclusions regarding Plaintiff's other claims for race-based discrimination.

**II.    DISCUSSION**

    A.    <u>Legal Standards</u>

        1.    *Standard of Review for R&Rs*

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1) (Supp. V 2011); <u>Williams v. Wainwright</u>, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam).  A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  If no party has objected to the report and recommendation, a court conducts only a plain error review of the record.  <u>United States v. Slay</u>, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam).

        2.    *Summary Judgment Standard*

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. <u>Herzog v. Castle Rock Entm't</u>, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the

moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  Id.

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S. 372, 380 (2007).  Where the record tells two different stories, one blatantly contradicted by the evidence, the Court is not required to adopt that version of the facts when ruling on summary judgment.  Id. "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  The party opposing summary judgment "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'"  Scott, 550 U.S. at 380 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).  A party is entitled

to summary judgment if "the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary verdict." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (internal quotations omitted).

B.   Analysis

1.   *Unobjected-to Findings of the R&R*

The Magistrate Judge found that Plaintiff failed to establish a prima face case of discrimination based on allegations that (i) Plaintiff's workplace was pervasively permeated with discriminatory intimidation, ridicule, and insult, (ii) Plaintiff was not promoted in 2012 because of his race, (iii) Plaintiff was denied the opportunity to train in central control in 2011 because of his race; (iv) Plaintiff was disciplined disproportionately compared to Caucasian employees; and (v) Plaintiff was disciplined for tardiness at work in retaliation for submitting a complaint to the EEOC.  Neither party objected to the Magistrate Judge's recommendation that Plaintiff failed to meet his burden to show a prima facie case of race-based discrimination and unlawful retaliation regarding the five claims listed above.  The Court finds no plain error in these findings, and the Defendant's Motion for Summary Judgment is granted on the five claims listed above.

###### 2.    Failure to Promote in 2011

"A plaintiff establishes a prima facie case of discriminatory failure to promote by showing that (1) he is a member of a protected class; (2) he was qualified and applied for the promotion; (3) he was rejected despite his qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1080 (11th Cir. 2005). For the purpose of the Court's review of the R&R, the Court assumes that Plaintiff established a prima facie case of discrimination. Defendant articulated a legitimate, nondiscriminatory reason for declining to interview Plaintiff for the Engineer position in 2011. Defendant contends that Plaintiff did not have supervisory experience, and Defendant was not aware of Plaintiff's previous experience in a supervisory role. Under the McDonnell Douglas framework, the burden is on the Plaintiff to demonstrate that Crystal Mover's articulated reason is a pretext for unlawful discrimination. Plaintiff must show "such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Combs v. Plantation Patterns, Meadowcraft, Inc., 106 F.3d 1519, 1528 (11th Cir. 1997). An employer's reason is not a pretext for unlawful discrimination "unless it is shown *both* that the

13

reason was false, *and* that discrimination was the real reason." Brooks v. County Comm'n of Jefferson County, 446 F.3d 1160, 1163 (11th Cir. 2006) (internal citations and quotation marks omitted) (emphasis in original).

"In the context of a promotion, a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [person] who received the position he coveted.  A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were motivated by race." Springer v. Convergys Customer Mgmt. Grp., Inc., 509 F.3d 1344, 1349 (11th Cir. 2007).  A plaintiff is also required to show that "the disparities between the successful applicant's and his own qualification were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" Id. (internal quotation marks and citations omitted).

The Magistrate Judge concluded that there was a genuine issue of fact regarding whether Defendant failed to promote Plaintiff to an Engineer position in 2011 because of Plaintiff's race.  This finding was principally based on the discriminatory comments that McCarthy had allegedly made in February, 2011.  McCarthy allegedly told a number of employees that "the difference between a white worker and a black worker [is that] a black worker wants to work four hours

and sit down for four hours . . . [A] white worker is a good worker.  A white worker will work with you all day.  He will help you in any way he can.  He is a good worker."  Def.'s Statement of Material Facts at ¶ 83; Pl.'s Dep. at 53-55. Even though McCarthy is an African-American, his alleged statements regarding the work ethic of African-Americans are, for the purposes of this Motion, deemed to be discriminatory.

Discriminatory comments, however, that are unrelated to an adverse employment action, are insufficient to establish pretext in the absence of "some additional evidence supporting a finding of pretext."  Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1229 (11th Cir. 2002) (internal quotation marks and citations omitted).  McCarthy's alleged statement regarding the work ethic of African-Americans is an isolated comment that did not relate to an adverse employment action required to be taken against Plaintiff or any other African-American employee at Crystal Mover.  Isolated comments that are unrelated to an adverse employment action are required to be "read in conjunction with the entire record" and "considered together with" the other evidence in the case.  Id. at 1229-30.

McCarthy was not the only manager that provided advice on the selection of candidates to interview for the Engineer position.  Marshall, an African-American

Engineer, and Yoshida, an Asian-American HR employee, also advised on the selection of candidates to interview for the Engineer position.  Plaintiff does not contend, and he has not presented any evidence, that Yoshida and Marshall shared McCarthy's allegedly discriminatory outlook or harbored racial animus towards African-Americans in the interview selection process.  Champ and Mihalco ultimately decided to interview four candidates for the Engineer position.  Two African-Americans and two Caucasians were selected to be interviewed.

Plaintiff assumes that McCarthy influenced Champ and Mihalco to disregard Plaintiff's application because of Plaintiff's race, but this assumption is not supported by any evidence.  There is no evidence that Champ and Mihalco considered race as a factor in selecting candidates for the interview.  The evidence, in fact, shows that Champ and Mihalco's selection of candidates was not motivated by race.  This is ultimately confirmed by the fact that Bush, an African-American Technician—and a member of Plaintiff's protected class—was selected for the Engineer position because he has a college degree and 23 years of experience at MARTA, including experience attained in supervisory roles.[4]

---

[4] Plaintiff seeks to have it both ways, arguing that he was qualified for the Engineer position because McCarthy offered him an Engineer position in Miami in 2009, but, in 2011, McCarthy manipulated four different managers to disregard Plaintiff's application because of his race.  That McCarthy allegedly offered Plaintiff an Engineer position in Miami, even though Plaintiff does not have a

Plaintiff has failed to present evidence of pretext in this matter sufficient to create a dispute of fact to avoid summary judgment. "Read in conjunction with the entire record" and "considered together with" the other evidence, McCarthy's alleged statement regarding the general work ethic of African-Americans is insufficient to establish that Defendant's failure to promote Plaintiff in 2011 was motivated by unlawful discrimination. Id. at 1229-30.

Plaintiff also has failed to show that the "disparities between the successful applicant's and his own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" Springer, 509 F.3d 1349 (internal quotation marks and citations omitted). Perret, a Caucasian Lead Technician, was selected for the Engineer position because he has a Bachelor's degree in Electrical Engineering, nine years of experience in the engineering field, and supervised other employees as an assistant project manager at another company before working at Crystal Movers. Plaintiff does not have a college degree. Plaintiff claims that he was qualified for the Engineer position because he supervised 50 employees at his own company, but he did not list this fact on the resume he

---

college degree or the requisite supervisory experience, undermines Plaintiff's allegations of racial discrimination against McCarthy.

submitted for the Engineer Position.  At his deposition, Plaintiff ultimately

conceded that he worked only with subcontractors at his own company, and that

his company did not have any formal employees.  White Dep. at 98:5-25.

Considering the entire record, the Court concludes that Plaintiff has failed to

present evidence that "no reasonable person, in the exercise of impartial judgment,

could have chosen [] [Perret] over the plaintiff."  Springer, 509 F.3d at 1349.

Defendant's objection to the R&R is sustained, and Defendant's Motion for

Summary Judgment is granted on Plaintiff's claim that Defendant failed to

promote Plaintiff to an Engineer position in 2011 because of Plaintiff's race.

### 3. *Overtime Opportunities*

To establish a prima facie case based on the denial of an employment

opportunity, a plaintiff must show that (1) he is a member of a protected class, (2)

he was subjected to an adverse employment action by his employer, (3) he was

qualified to do the job in question, and (4) his employer treated similarly situated

employees of a different race more favorably than it treated him.

Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).  Crystal Mover's records

indicate that, in 2011, Plaintiff worked 112 hours of overtime, Hite, a Caucasian

Technician, worked 606 hours of overtime, and Tim Fox, an Asian-American

Technician, worked 396 hours of overtime.  Based on these facts, the Magistrate

Judge concluded that Plaintiff established a prima facie case of discrimination because two Technicians outside Plaintiff's protected class were treated more favorably regarding overtime pay in 2011.[5]  The Court finds no plain error in this finding.

Plaintiff objects to the Magistrate Judge's determination that there is no evidence of pretext regarding Crystal Mover's proffered reasons for the disparity in overtime pay.  In 2011, Crystal Mover implemented the matrix system for the distribution of overtime opportunities.  This matrix was based on a random method for assignment of overtime opportunities that was utilized by the Engineer on a particular shift.  The Engineer looked at the matrix, asked the employee on the top of the matrix if the employee was available to work, and then moved down the list until an available employee was found.  Plaintiff does not dispute the existence of the matrix system, but he argues that the matrix should be disregarded because two

_____

[5] Plaintiff also claims that Matt Lowe, an employee of Desmear, had higher overtime hours and is, therefore, a relevant comparator for the purpose of analyzing this discrimination claim.  Desmear is a subcontractor of Crystal Mover that provides supplemental staff at the Airport.  Crystal Mover does not employ Lowe.  Plaintiff has not presented any evidence that Crystal Mover distributed overtime opportunities to Lowe.  The Court concludes that Lowe is not a relevant comparator, or a similarly situated employee, for the purpose of analyzing Plaintiff's discrimination claim based on the denial of overtime in 2011.

employees outside his protected class had higher overtime hours than Plaintiff.[6]

Hite had the highest number of overtime hours because there were problems with DRR and PDS, and Hite is an expert on those systems.  Fox worked on the second shift.  Employees on the first and second shift are given more opportunities to work overtime because the majority of overtime hours are worked during the third shift.  Plaintiff worked on the third shift.  As a result, Plaintiff's ability to work overtime was limited.  Based on these uncontested facts, the Court concludes that the Plaintiff has failed to show that the Defendant's reasons for the disparity in overtime pay in 2011 are a pretext for unlawful discrimination.  Combs 106 F.3d at 1528.

An employer's reason is not a pretext for unlawful discrimination "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." Brooks, 446 F.3d at 1163 (internal citations and quotation marks omitted) (emphasis in original).  Plaintiff relies on the fact that two individuals outside his protected class had higher overtime hours to assume that he was denied overtime

---

[6] Plaintiff also relies on his own testimony to argue that McCarthy "approved" overtime hours, and McCarthy's alleged statement about the work ethic of African-Americans is evidence of discrimination regarding Plaintiff's overtime claim. Even if the Court assumes that McCarthy ultimately "approved" the assignment of overtime hours, there is no dispute that McCarthy did not "assign" overtime hours. Overtime hours were assigned, based on the matrix system, by an Engineer responsible for the Technicians on a particular shift.

opportunities because of his race.  Plaintiff has failed to rebut the Defendant's legitimate, nondiscriminatory reasons for the allocation and assignment in overtime pay opportunities, and Plaintiff has not presented any evidence that "discrimination was the real reason" for the allocation and assignment of overtime work.  Plaintiff's objection is overruled, and Defendant's Motion for Summary Judgment is granted on Plaintiff's overtime claim.

### 4.    Clocking in Early

In his Opposition to Crystal Mover's Motion for Summary Judgment, Plaintiff alleged that Fox and Hite were able to clock in up to 15 minutes early and were paid for the additional time, but African-American employees, including Plaintiff, were not paid for additional time if they clocked in earlier than their scheduled time for work.  The Magistrate Judge found that Plaintiff failed to establish a prima facie case of discrimination because, from August 2010 through December 2011, Plaintiff was paid for clocking in early on 62 days, Fox was paid for clocking in early on 45 days, and Hite was paid for clocking in early on 41 days.  The Magistrate Judge concluded that Plaintiff failed to establish a prima facie case of discrimination because he was treated more favorably than Hite and Fox.

Plaintiff objects to the Magistrate Judge's findings regarding this claim and

asserts, for the first time in his Objections to the R&R, that he was directed to stop clocking in early, but Hite and Fox were allowed to keep doing so.  There is no evidence to support this assertion.  Plaintiff claims to know that Hite and Fox were able to clock in 15 minutes early because he saw their time sheets, but Plaintiff does not remember the date or month of the time sheets.  Plaintiff also has not presented any evidence that Hite and Fox were able to clock in 15 minutes early, but Plaintiff was not able to do so, after the Defendant implemented a policy that discouraged employees from clocking in early to get paid for additional time. Plaintiff's conclusory allegations are insufficient to raise an inference of intentional discrimination.  See Young v. General Foods Corp., 840 F.2d 825, 829 (11th Cir. 1988).  Plaintiff's objection to the R&R regarding this claim is overruled, and Defendant's Motion for Summary Judgment is granted.

### 5.    *Failure to Promote in 2012*

To establish a prima facie case of unlawful retaliation, a plaintiff must show that (1) he engaged in a protected activity or expression, (2) he received an adverse employment action, and (3) there is a causal link between the protected activity or expression and the adverse action.  See Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1454 (11th Cir. 1998).

Plaintiff claims that he was not promoted to an Engineer position in 2012

because he filed a charge of discrimination against the Defendant with the EEOC. On May 2, 2011, Plaintiff filed a charge with the EEOC, in which he alleged that Defendant discriminated against him because of his race and national origin.  On March 5, 2012, Defendant solicited applications for an Engineer position after Bush left the company.  On May 29, 2012, Plaintiff was informed that he was not selected for the Engineer position.

In his opposition to the Defendant's Motion for Summary Judgment, Plaintiff did not contend that temporal proximity provides evidence of a causal link between his EEOC complaint and Defendant's decision not to select Plaintiff for the Engineer position.  The Magistrate Judge found that there was no evidence of temporal proximity because Plaintiff filed a complaint with the EEOC over a year before Defendant selected Nelson for the Engineer position.  In his Objections to the R&R, Plaintiff now argues that there is evidence of temporal proximity because McCarthy received a written disciplinary warning on February 27, 2012.  This argument is untimely since it is offered in response to the R&R and was not raised before.  See Williams v. McNeil, 557 F.3d 1287, 1291 (11th Cir. 2009).  Even if the argument is considered, it does not have merit.

In July, 2011, Mihalco, and Fumi Takashina, a manager in the Compensation and Benefits Department, conducted an internal investigation in

response to Plaintiff's EEOC complaint.  Mihalco and Takashina determined that there was no evidence that unlawful discrimination or harassment had taken place at the Airport.  Following the investigation, McCarthy was orally reprimanded "for poor performance discovered during the investigation, specifically, employee relations, some inappropriate comments, and poor judgment when interacting with employees."  Mihalco Aff. at ¶ 42.  The February 27, 2012, letter, "address[ed] the same issues," that were verbally discussed with McCarthy in July, 2011, and it specifically stated that employees had complained that McCarthy "made insensitive remarks regarding the difference between how black and white workers do their jobs."  Id.; Ex. 6, attached to Mihalco Affidavit.

There is no dispute that McCarthy was verbally counseled ten months before Crystal Mover decided to promote Nelson to the Engineer position.  Even if the Court considered the February 27, 2012, disciplinary letter, Plaintiff cannot rely on it for the speculative claim that McCarthy retaliated against Plaintiff because McCarthy had been disciplined in July, 2011, almost ten months before the decision to hire an Engineer was made in May, 2012.  McCarthy's impact on the selection of candidates was minimal because he was one of six managers that interviewed Plaintiff for the Engineer position in 2012, and Plaintiff has failed to present evidence that McCarthy influenced or manipulated five other managers not

24

to select Plaintiff because of his race.

Plaintiff's reliance on McCarthy's disciplinary letter also is misplaced. A plaintiff can establish temporal proximity by showing that the challenged decision followed almost immediately after the protected expression to support the logical inference that the two events are related. See Clark v. County Sch. Dist. V. Breeden, 532 U.S. 268, 273 (2001). A gap of three months or more between the protected activity and the challenged action is too long to support an inference that the two events are connected. See Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). In this matter, the gap between the protected activity and the adverse action exceeded a year. Plaintiff's objection to the R&R is required to be overruled because he failed to show a causal link between the filing of his EEOC complaint and Defendant's decision to promote Nelson to the Engineer position. In his Objections to the R&R, Plaintiff claims that he has shown a prima facie case of unlawful retaliation because he was denied opportunities for overtime and clocking in earlier than his scheduled time due to his race. As discussed above, these claims are without merit.

The Court also concludes that Plaintiff failed to show that the Defendant's reasons for not selecting Plaintiff are a pretext for unlawful retaliation. Nelson, an African-American, was selected for the Engineer position because he has an

associate's degree in electronics, twenty-eight years of electrical-mechanical experience, and supervisory experience from his previous jobs.  Plaintiff was not selected for the Engineer position because Plaintiff does not have a college degree or relevant supervisory experience, and Plaintiff was not impressive during the interview.  Plaintiff has failed to rebut these reasons.  Plaintiff has failed to present any evidence that he was not selected for the Engineer position because Defendant intended to retaliate against Plaintiff for filing a discrimination complaint with the EEOC.

## III.   CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge Justin S. Anand's Final Report and Recommendation [39] is **ADOPTED AS MODIFIED**.  The Defendant's Objection to the R&R [42] is **SUSTAINED**, and Defendant's Motion for Summary Judgment [29] is **GRANTED** on Plaintiff's claim that Defendant failed to promote Plaintiff to an Engineer position in 2011 because of Plaintiff's race.

**IT IS FURTHER ORDERED** that the Plaintiff's Objections to the R&R are **OVERRULED** [43].

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**SO ORDERED** this 18th day of September, 2014.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE